**Robert Michael HANAHAN,**
**Petitioner-Appellant,**

v.

**Dennis M. LUTHER, Warden and William Pilcher, Chief Probation Officer, Respondents-Appellees.**

No. 81–2176.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1982.

Decided Aug. 27, 1982.*

Opinion Oct. 5, 1982.

Certiorari Denied Jan. 24, 1983.
See 103 S.Ct. 815.

---

* This appeal was originally decided by unreported order on August 27, 1982. See Circuit Rule

35. The Court has subsequently decided to issue the decision as an opinion.

Richard F. Walsh, Chicago, Ill., for petitioner-appellant.

Steven A. Miller, Asst. U.S. Atty., Chicago, Ill., Dan K. Webb, U.S. Atty., Chicago, Ill., for respondents-appellees.

Before PELL, CUDAHY and SPRECHER,** Circuit Judges.

PELL, Circuit Judge.

Robert Michael Hanahan petitioned for a writ of habeas corpus, challenging the revocation of his federal parole. The district court denied the petition and Hanahan appeals.

Hanahan was on federal parole after having been convicted of bank robbery and robbery of an Internal Revenue Service facility. The incident giving rise to the issuance of a parole violator warrant against Hanahan was his arrest, along with Paul Panczko, Robert Pullia, Gerald Thomaszek, and Robert Siegal, on December 3, 1979. The five men had met in the parking lot of Northwest Federal Savings Association in Chicago, Illinois. When police officers approached the group, Hanahan and the other four attempted to flee. Hanahan departed in the van he had been driving and led police on a high-speed chase. He was apprehended and the van was searched. The police officers found two handguns in a brown paper bag, a third handgun loose in the back of the van, rubber face masks, a crowbar, and a sledge hammer.

On December 14, 1979, the United States Parole Commission issued a parole violator warrant against Hanahan, charging him with violating four conditions of his parole: unauthorized association with known criminals, unauthorized possession of firearms, possession of a stolen motor vehicle, and conspiracy to commit savings and loan robbery. On February 15, 1980, a supplemental warrant was issued charging Hanahan with unauthorized association with a known felon and leaving the district without permission.

Following issuance of the first parole violator warrant, Hanahan's attorney requested that he be given access to police reports relating to the arrest and that subpoenas be issued for adverse and favorable witnesses. Hanahan's attorney filed a Freedom of Information Act request for the police reports, but the Parole Commission declined to release them because they might reveal the identity of a confidential informant or result in physical harm to another person.

The Parole Commission scheduled a preliminary hearing on the parole violator warrant for January 2, 1980. Hanahan was granted a postponement of the preliminary hearing in order to retain counsel. Following the postponement, the Commission notified Hanahan that the preliminary and final revocation hearings would be consolidated. Although Hanahan's attorney had given notice on January 9, 1980, that he would be engaged in a six-week trial beginning February 6, 1980, Hanahan's consolidated hearing was scheduled for February 19 to February 22. Hanahan requested and received a six to eight-week continuance. The consolidated hearing was then held on April 29, 1980, and Hanahan's parole was revoked.

Subsequent to the revocation decision, the Regional Commissioner of the Parole Commission noted that, although Hanahan had requested the presence of adverse witnesses at his hearing, none had been present. Accordingly, the Commission ruled that Hanahan was entitled to a new parole revocation hearing at which adverse witnesses would be present. A second hearing was held August 18, 1980, at which Hanahan, his counsel, and adverse witnesses were

** Circuit Judge Robert A. Sprecher was assigned to the panel to hear oral argument in this case. He had read the briefs prior to oral argument but was unable to be present at the argument and did not participate thereafter in the decision of the case because of his failing health and subsequent death on May 15, 1982.

present. Hanahan had requested that the Commission subpoena Maxine Shipp, the owner of the van he was driving when arrested, along with the records of United Fruit Auction, Inc. This request was denied, however, and the Parole Commission again found that Hanahan had violated four conditions of his parole.

Hanahan appealed the revocation decision to the Regional Commissioner and to the Parole Commission's National Board of Appeals. The Appeals Board affirmed the revocation on only two grounds: unauthorized association with known criminals and unauthorized possession of firearms. Hanahan then filed a petition for a writ of habeas corpus with the district court, alleging a number of statutory and constitutional violations in the course of his parole revocation proceedings.[1] The district court denied the petition.

## I

Hanahan argued below that the Parole Commission's decision that he had violated the conditions of his parole was not supported by a preponderance of the evidence. The district court rejected this argument, finding a rational basis for the Parole Commission's decision. Hanahan now contends that the district court erred in applying merely a "rational basis" standard of review. Instead, Hanahan contends, the district court should have independently determined whether the Commission's decision was supported by a preponderance of the evidence.

■ We find that the district court applied the correct standard of review in this case. As we said in *Luther v. Molina*, 627 F.2d 71 (7th Cir.1980), "[i]t is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to [parole] revocation." *Id.* at 75. Although this wide discretion does not eliminate the possibility of habeas corpus relief, it does mean that district courts should

grant such relief only in limited circumstances. *Id.* at 75–76. Thus, when a district court reviews a decision of the Parole Commission on a habeas corpus petition, "[t]he inquiry is not whether the Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir.1976). *See DeFillo v. Fitzpatrick*, 378 F.2d 85, 87 (2d Cir.1967).

■ Under this standard of review the district court correctly held that "[b]ased on the totality of the evidence presented, ... the decision reached by the Commission and affirmed by the Board of Appeals was rationally based and was not arbitrary or capricious." At the revocation hearing, Hanahan admitted having associated with Robert Pullia and with Paul Panczko, both known felons, on several occasions. Police officers testified at the hearing that Hanahan had rendezvoused with known felons in a savings and loan parking lot; that one of these felons had transferred firearms and tools to the van driven by Hanahan; that Hanahan had led the police on a high-speed chase in an attempt to escape; and that handguns, a crowbar, and masks had been found in the van. It is clear from these facts that the Commission had rational bases for concluding that Hanahan violated the conditions of his parole. We therefore agree with the district court that the decision of the Parole Commission, as affirmed by the Board of Appeals, should not be disturbed on this ground.

## II

Hanahan's next argument is that when the National Appeals Board affirmed the finding that Hanahan had associated with known criminals, it relied in part on the Circuit Court of Cook County transcript of his testimony regarding a charge of posses-

---

1. Although Hanahan is a federal prisoner, his petition for a writ of habeas corpus correctly seeks relief under 28 U.S.C. § 2241 rather than 28 U.S.C. § 2255. Because Hanahan is not attacking his sentence, § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. *See Zannino v. Arnold*, 531 F.2d 687, 689 n. 5 (3d Cir.1976).

sion of a stolen motor vehicle. Hanahan contends that consideration of the transcript, without notice to him, violated his right to be apprised of the evidence against him. *See* 18 U.S.C. § 4214(a)(2)(D); U.S. Const. amends. 5 & 6.

Hanahan challenges only one of the two grounds on which the Appeals Board affirmed the finding that he had associated with known criminals. The unchallenged basis was the testimony at the August 18, 1980, parole revocation hearing that Hanahan was arrested in the company of four other convicted felons. The only ground attacked by Hanahan is the Board's reference to his testimony, given at his state court hearing, that he had fled from the police because he did not wish to be found associating with other criminals.

■ Hanahan is correct that a parolee has a right to be apprised of the evidence against him and to confront and cross-examine witnesses; however, the district court held, and we agree, that Hanahan's rights were respected in this case. The Supreme Court has emphasized the informal and flexible nature of parole revocation proceedings, and has specifically sanctioned the use of evidence "that would not be admissible in an adversary criminal trial." *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). Moreover, both Hanahan and his attorney were present at the state court proceeding where they had a full opportunity to participate. Finally, Hanahan's attorney himself brought to the Board's attention Hanahan's state court acquittal on the stolen vehicle charge. Hanahan cannot, therefore, reasonably claim that he was unaware of his state court testimony or the uses to which it could be put by the Appeals Board. Under these circumstances, we find that the consideration of the state court transcript did not violate Hanahan's right to be apprised of the evidence against him.[2]

### III

■ In the course of his parole revocation proceedings, Hanahan requested access to the police reports relating to his December 3, 1979, arrest. The Parole Commission refused to release the reports because they contained information that might reveal the identity of a confidential informant or result in physical harm to someone. Hanahan argues that the failure to produce these reports, which were relied upon by the Commission, violated his right to be apprised of the evidence against him under 18 U.S.C. § 4214(a)(2)(D).

The district court agreed that the police reports should have been disclosed, but found that the failure to produce them was harmless error. Assuming *arguendo* that the police reports were improperly withheld, we agree with the district court that such an error was harmless. Both the Parole Commission and the Board of Appeals relied on other sources of information in deciding to revoke Hanahan's parole. In addition to the undisclosed police reports, the Parole Commission explicitly based its decision on the live testimony of police officers at the revocation hearing and on a letter from Hanahan's parole officer. The Board of Appeals did not rely on the police reports at all. The Board affirmed the Commission's decision on the basis of the police officers' testimony and Hanahan's own testimony before the Circuit Court of Cook County.

The revocation of Hanahan's parole was, therefore, supported by an abundance of evidence apart from the police reports. Hanahan was aware of all of this evidence and had an opportunity to challenge it before both the Commission and the Board. The district court was correct in deciding that, in these circumstances, the Commission's refusal to disclose the reports was harmless error. *See United States v. Batencort,* 592 F.2d 916, 917 (5th Cir.1979); *United States v. Marr,* 428 F.2d 614, 616 (7th Cir.1970).

---

**2.** Even if the Board's reliance on the transcript were found to be error, our decision would not change. The Board's finding rested upon two independent bases. The testimony that Hana-

han was observed and arrested in the company of known criminals was itself a sufficient ground for the Board's decision.

## IV

Hanahan's fourth argument on appeal is that he was denied a prompt preliminary hearing, contrary to 18 U.S.C. § 4214(a)(1) and in violation of his right to due process of law. His fifth argument is that the delay in providing a final revocation hearing with witnesses present also denied him due process. We address these contentions together.

The parole violator warrant against Hanahan was issued on December 14, 1979. A preliminary hearing was scheduled for January 2, 1980, but it was continued at Hanahan's request in order for him to retain counsel. Subsequently Hanahan requested a parole revocation hearing with adverse witnesses present. The Commission scheduled a consolidated preliminary and final revocation hearing for February 19 to February 22, 1980. Because Hanahan's attorney was to begin a lengthy trial in early February, Hanahan requested and was granted a six to eight-week continuance, and the hearing was rescheduled for April 29, 1980. The April 29 hearing was clearly defective, for no adverse witnesses were present. The Commission therefore granted Hanahan a new revocation hearing, which was held on August 18, 1980.

■ Due process requires that a parolee receive a revocation hearing within a reasonable time after being taken into custody. *United States ex rel. Sims v. Sielaff,* 563 F.2d 821, 825 (7th Cir.1977). Three months has been mentioned in some cases as the outside limit of reasonableness. *United States ex rel. Hahn v. Revis,* 520 F.2d 632, 638 (7th Cir.1975), *vacated and modified,* 560 F.2d 264 (7th Cir.1977). The three-month time period is, however, no more than a guideline, *United States ex rel. Sims v. Sielaff,* 563 F.2d 821, 827 (7th Cir.1977), and the sanction for exceeding it is not necessarily to dismiss the parole violator warrant, *Smith v. United States,* 577 F.2d 1025, 1028–29 (5th Cir.1978).

■ A parolee's claim that his due process rights have been violated by the delay preceding his parole revocation hearing cannot be judged using arbitrary guidelines.

*United States ex rel. Sims v. Sielaff,* 563 F.2d 821, 828 (7th Cir.1977). Rather, we must apply the standards suggested in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining whether a defendant's constitutional right to a speedy trial has been denied. *United States ex rel. Sims v. Sielaff,* 563 F.2d at 828. The four factors to be considered under *Barker* are: the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant as a result of the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). No single factor is either necessary or sufficient to a finding of a deprivation of a constitutional right. Each should be considered together with the relevant circumstances in "a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. at 2193. We must, therefore, consider the course of Hanahan's parole revocation proceedings in light of these four factors. *See United States ex rel. Sims v. Sielaff,* 563 F.2d 821, 828–29 (7th Cir.1977).

■ Eight months elapsed between the issuance of a parole violator warrant against Hanahan on December 14, 1979, and his final parole revocation hearing on August 18, 1980. The district court found, however, that the delay from January 2, 1980, through April 22, 1980, was due to Hanahan's requests for postponements. We agree. That delay was, therefore, perfectly reasonable. We then must examine the period of time between Hanahan's April 29, 1980, revocation hearing—which was admittedly defective—and the August 18, 1980, hearing. This delay was due to the Commission's own efforts to provide Hanahan with a hearing comporting with due process. Nonetheless, the four-month delay, while not *per se* unreasonable, raises a due process question. We must, therefore, consider the final two *Barker* factors in determining whether Hanahan's rights were violated.

The third factor is whether the parolee asserted his right to a prompt hearing. The

*Barker* Court held that a defendant's silence does not waive the right to a speedy trial, *Barker v. Wingo,* 407 U.S. 514, 528, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), but "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531–32, 92 S.Ct. at 2192–93. The fact that Hanahan made no demand for a prompt hearing after his postponement was granted in January, 1980, makes it "difficult for [Hanahan] to prove that he was denied a speedy [hearing]." *Id.* at 532, 92 S.Ct. at 2192.

Finally, we can find no prejudice to Hanahan resulting from the delay here. The *Barker* Court identified three interests protected by the speedy trial right which we find helpful in deciding whether Hanahan was prejudiced by the delay. These three interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. at 2192 (footnote omitted). Hanahan was not incarcerated for the great majority of this period, and as a convicted felon on parole, his level of anxiety cannot be said to be as high as that of an unconvicted defendant. Indeed, Hanahan has not argued that oppressive pretrial incarceration or anxiety and concern have in any way prejudiced his interests.

Hanahan does contend, however, that the delay impaired his defense because it resulted in the loss of the testimony of Maxine Shipp. Shipp, the owner of the van Hanahan was driving when he was arrested, could not be located by the time of the August 18, 1980, hearing. According to Hanahan, Shipp would have testified that he had borrowed her van in order to pick up a crate of fruit from Paul Panczko, one of the men arrested along with Hanahan. The absence of her testimony, argues Hanahan, made it easier for the Commission to infer guilty knowledge from his actions.

Even if we accept that Shipp would have so testified, we cannot see that the absence of such testimony prejudiced Hanahan. Hanahan's parole was revoked for unauthorized association with known criminals and unauthorized possession of firearms. Shipp's testimony would not have been at all probative on these two points; it could only have explained his stated reason for borrowing the van. The charges on which Hanahan's parole was revoked were supported by evidence that Shipp's testimony could not have contradicted. Thus, we cannot agree that the loss of the testimony, if due to the delay, resulted in prejudice to Hanahan.

Having considered the facts of this case in light of the four *Barker* factors, and recognizing, as we must, the importance of a parolee's due process right to a prompt revocation hearing, we find that Hanahan's rights were not violated by the delay here.

### V

■ Hanahan's final argument is that his right to due process of law was violated by the Commission's refusal to subpoena Maxine Shipp and the records of the United Fruit Auction company. As noted above, Hanahan claims that Shipp could have explained his reason for borrowing her van. The records of United Fruit Auction, according to Hanahan, would have established that Paul Panczko was indeed purchasing fruit for resale in December, 1979. Hanahan argues that this evidence would have supported his story that he met with Panczko and the others for the purpose of obtaining a crate of fruit.

*Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), guarantees parolees the "opportunity to be heard in person and to present witnesses and documentary evidence" and "the right to confront and cross-examine adverse witnesses." *Id.* at 489, 92 S.Ct. at 2604. Hanahan does not contend that he was unable to confront and cross-examine adverse witnesses. His argument is that the Commission's refusal to issue the subpoenas denied him the opportunity to present witnesses and documentary evidence.

Under 18 U.S.C. § 4214(a)(2) the Parole Commission has the power to subpoena witnesses and evidence. Pursuant to that section, the Commission has issued regulations that state:

> [T]he Regional Commissioner may, upon his own motion or upon a showing by the parolee that a witness *whose testimony is necessary to the proper disposition of his case* will not appear voluntarily at a local revocation hearing or provide an adequate written statement of his testimony, issue a subpoena for the appearance of such witness at the revocation hearing.

28 C.F.R. § 2.51(a)(2) (1981) (emphasis added). Hanahan does not challenge the constitutionality of the statute or the Commission's regulation. His argument is that the Commission acted improperly in light of that statute and regulation. We disagree.

Under no circumstances can Maxine Shipp or the fruit company be considered witnesses "whose testimony is necessary to the proper disposition" of this case. Their testimony, tending to show that Hanahan met Panczko in the van to pick up fruit, would do nothing to explain Hanahan's admitted association with known criminals, the presence in the van of three loaded guns, or Hanahan's desperate flight from the police. Those are the facts upon which the Commission's revocation decision was based. The testimony of Shipp or the fruit company, even if accurately characterized by Hanahan, could have added nothing to that evidence. Thus, Hanahan's right to due process was not violated by the Commission's refusal to issue the subpoenas.

## VI

For the foregoing reasons, the district court's judgment denying Hanahan's petition for a writ of habeas corpus is AFFIRMED.