This issue arises out of Petitioner's Petition for Writ of Habeas Corpus whereby Petitioner alleges he is wrongfully incarcerated by the Respondent and the State of Ohio due to the failure of the Ohio Adult Parole Authority to hold a parole revocation hearing. Petitioner goes on to allege that his parole hearing was unreasonably delayed in contradiction to his assertion that the APA failed to hold a parole revocation hearing.
The facts indicate that in 1972 Petitioner was first arrested, convicted and sentenced to one to ten years for embezzlement. On April 30, 1973, the trial court suspended his sentence and placed Petitioner on probation for two years. On August 1, 1974, Petitioner pled guilty to receiving stolen property and was again sentenced to one to five years incarceration to run concurrent with the remaining sentence for receiving stolen property. On January 16, 1975, Petitioner was paroled.
On November 5, 1975, Petitioner was found guilty of aggravated robbery and sentenced to four to twenty-five years incarceration. Petitioner was again paroled on January 17, 1980.
On November 5, 1980, Petitioner was found guilty of aggravated robbery, aggravated burglary, and aggravated kidnapping, and was sentenced to seven to twenty-five years for the robbery and burglary charges to be served consecutively. On October 6, 1994, Petitioner was again paroled.
On August 5, 1995, Petitioner, (now a suspect in a murder investigation) was arrested and charged with tampering with evidence. On August 7, 1995, the APA was notified that Petitioner was being held. On August 10, 1995, Petitioner waived his right to the on-site probation violation hearing. On October 18, 1995, Petitioner was found guilty of tampering and sentenced to two years incarceration.
On May 14, 1998, Petitioner was given his Parole Violation Mitigation Hearing as required in the consent decree reached in the Kellogg v. Shoemaker (S.D.Ohio 1996), 927 F. Supp. 244, class action suit. As a result of this hearing Petitioner's parole was revoked.
Ohio's parole revocation procedure is divided into two stages. First, a preliminary hearing is held to determine if there is probable cause to believe the parolee has violated the conditions of his parole. In our case, Petitioner waived his right to this preliminary hearing on August 10, 1995. Second, if probable cause exists, or if Petitioner waives the preliminary hearing, a final hearing must be granted within a reasonable time.
R.C. 2967.15 states in relevant part:
 "If the authority fails to make a determination of the case of a parolee or releasee alleged to be a violator of the terms and conditions of the parolee's or releasee's conditional pardon, parole, other release, or post-release control sanctions within a reasonable time, the parolee or releasee shall be released from custody under the same terms and conditions of the parolee's or releasee's original conditional pardon, parole, other release, or post-release control sanctions."
In Coleman v. Stobbs (1993), 23 Ohio St.3d 137, the Ohio Supreme Court held that a court should apply a two-part test in determining whether the delay of the APA, in not commencing a final parole revocation hearing, entitles an alleged parole violator to habeas corpus relief. Coleman, supra at 139. First, it must be determined that any delay was unreasonable. This involves the consideration and balancing of three factors: (1) the length of the delay; (2) the reasons for the delay; and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time. Id. Second, if the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator. The court must weigh any prejudice to the alleged parole violator in light of the interests protected by the "reasonable time" requirement of R.C.2967.15. of course, if there was no unreasonable delay in the first place, there is no requirement to examine the prejudice prong. See Seebeck v. Zent (1993), 68 Ohio St.3d 109.
However, even if a delay in holding the final hearing was unreasonable, Petitioner is not entitled to relief in habeas corpus unless he was prejudiced by the delay. Coleman, supra.
The Ohio Supreme Court has stated that the factors to be considered in determining whether the Petitioner was prejudiced are (1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator; and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing. State ex rel. Taylor v. Ohio Adult ParoleAuth. (1993), 66 Ohio St.3d 121, 128. The "most serious" component of prejudice requiring the court's "primary attention" is the third, i.e., the possibility that delay impaired the accused parole violator's ability to defend against revocation.Flenoy v. Ohio Adult Parole Auth. (1990), 56 Ohio St.3d 131, 136.
First, in our case, Petitioner initially argues that he had never received a parole revocation hearing. This allegation is incorrect. Respondent has submitted evidence in the form of a letter notifying Petitioner of the mitigation hearing date of May 14, 1998 and a "Digest of Mitigation Hearing for Felix Alford" dated May 14, 1998.
Clearly, Petitioner had his final parole revocation mitigation hearing on May 14, 1998. But was the delay in holding that hearing unreasonable? There were two years and nine months between Petitioner's arrest notification to the APA of August 7, 1995 and Petitioner's final hearing on May 14, 1998. This delay clearly was unreasonably long and no reason for the delay was given by the Respondent. Also, per exhibit 19 submitted by Respondent, Petitioner had requested a hearing sometime prior to March of 2997.
As noted in Coleman, supra, even if the delay in holding the final revocation hearing was unreasonable Petitioner is not entitled to Habeas Corpus relief unless he was prejudiced by the delay. The first factor to be considered is the "Prevention of Oppressive Prehearing Incarceration." On October 10, 1995, Petitioner was sentenced to two years incarceration on the tampering charge. Thus, Petitioner was due to be incarcerated for over two years of the period between the APA preliminary hearing and his final hearing. Petitioner has not alleged, nor is there any evidence, that Petitioner displayed any "anxiety and concern" over the delay in holding his final parole revocation hearing.
Finally, and most important, is the issue of whether, "That delay will impair the accused parole violator's defense at his final parole revocation hearing."
Although an unreasonable delay has occurred, Petitioner has failed to demonstrate any prejudice from the delay since there is no evidence that Petitioner's ability to defend himself against the charges which led to his parole revocation was impaired by the delay. When Petitioner was given notice of his final parole revocation hearing he was notified of his right to have witnesses present to testify in his behalf. (See Motion to Dismiss, Ex. 21). No witnesses were present to testify for the Petitioner. Also, there was no evidence submitted by the Petitioner as to what any witnesses which may have been called would have testified to. Petitioner did testify in his own behalf. A summary of Petitioner's testimony was as follows:
 "Inmate states that when he was paroled in 1994, he immediately obtained a job and was working six days per week. Approximately 10-11 months later, he caught the new offense. He had completed a drug program and believed he had done everything he was asked to do. He was going to AA/NA two times per week and was reporting every week. He caught 18 months from the Court for the new offense and then 3 years from the Parole Board. He had submitted weekly urines with no dirties. He admits having been arrested once and incarcerated 4 days following a dispute with his daughter and her mother, but no charges were filed. Since return to prison, he has completed stress management, anger management, bible study and has been attending religious services. He states that the MHR is not accurate regarding the knives. He admits having been placed in LC for 2 knives, but denied threatening anyone. He claims that the knives were in the paint shop and he was the only one near them, so he was charged."
None of Petitioner's testimony refuted the charges the parole violation was based upon. Petitioner's violation was that he was arrested and convicted of the criminal charge of tampering with evidence.
Finally, Petitioner has alleged that the Parole Board added a "new" three year sentence on the Petitioner's prison sentence. Petitioner has not submitted any evidence of any new sentence; nor is this claim evident in any of the documentation submitted by the Respondent. Unsupported conclusions of a petition or complaint are not considered admitted and are insufficient to withstand a motion to dismiss. See Hammond v.Dallman (1992), 63 Ohio St.3d 666, and State ex rel Fain v. SummitCty. Adult Probation Dept. (1995), 71 Ohio St.3d 658.
For all the reasons cited above, Petitioner's Petition for Writ of Habeas Corpus is without merit and denied.
Respondent's Motion to Dismiss is granted.
Costs taxed against Petitioner.
Final order. Clerk to serve a copy of this order to the parties as provided by the Civil Rules.
 ___________________________________ EDWARD A. COX, PRESIDING JUDGE
 ___________________________________ GENE DONOFRIO, JUDGE
 ___________________________________ JOSEPH J. VUKOVICH, JUDGE